The court will proceed to the second case of the day, Brown v. Country View Equestrian Center. Mr. Brown.  It's very interesting to note that in researching this case, there are some 40 states that have passed equine liability acts, activity acts. But there isn't much case law regarding the definition of those acts and the exemptions, and yet here today we have two cases in a row involving the Wisconsin Liability Activity Act. I think we can be pretty confident that they're the first in this century to reach this court. Yes. The issue in our case, and the facts are different in our case than in the other case that you heard, Abigail Brown was in a private riding lesson with an instructor in an enclosed arena. If I could interject for a minute. Yes. This is your daughter? Yes, it is. And are you a witness? No. Well, I am a witness to the, yes, I am a witness. But have I testified as a witness? No, and I most likely will not testify as a witness. I do not see a conflict at this point, other than I'm probably overly passionate about the case. Abigail Brown retained or hired a professional instructor to give her a private riding lesson regarding a thoroughbred which she owned named Golden Gift. She told the instructor that she was a green rider, that she needed instruction, and that the horse was an off-the-track thoroughbred and he was green as well. It was a controlled setting from the standpoint that an instructor is much like a referee in a football game. An instructor not only controls the rider, it controls the horse. He or she controls the environment in which that horse is operating in. She controls the obstacles or the maneuvers or the gates that the horse is going to be taken. She stands in the middle of the ring and she conducts it like a conductor conducting a symphony. 3B, the immunity section, and I'll do deference to the court. I heard you cite the 3B exception and I heard you use the word and when talking about the two determinations that 3B cites. The first determination is that the provider shall determine basically the ability of the rider, is he a good fit for the horse? The second part uses the word or, and as the Mettler court interpreted, determines whether or not the provider can safely manage the horse that the rider is riding. The provider or the rider? The provider. That's not consistent with the structure of the statute. It is clear because It's clearly, it abrogates the immunity if the provider of the horse fails to make two determinations about the person's ability, the person meaning the plaintiff in the case, to safely engage in equine activity in the first place and to safely manage the particular equine in question. And I'll do deference, it's not and, it's or. They have to make two determinations. It's or and safely manage the particular equine provided based on the person's representations of his or her ability. The ability of the person, meaning the plaintiff, to safely manage the particular equine, not the ability of the provider. The Colorado statute. That's not our statute. Wisconsin statute is different. It was a statute that based, the legislative history shows. Let's talk about the text of the statute. Okay. In the Colorado statute, it's. Let's talk about the Wisconsin statute. There is nothing in the second section that refers to a rider or a participant. The focus is on the person. A plain meaning. The provider has an obligation to ascertain the ability of the person who's injured. A plain, in all due respect, a plain reading of this section like the Mettler court did. And the Mettler court, the problem with the Mettler court is they just wrote, they just stated it as if it was the meaning. Right. It was a drive-by ruling. And they didn't really. We need to reconcile with the Helen court. Right. But a plain reading of this. When you read it, it doesn't say participant. In fact, they omitted participant from the second section when they drafted this law. And so the only plain reading can be that they want the provider to safely manage the horse once it has been provided. How do you get that? By reading it. Provides an equine to a person and makes a reasonable effort to determine the ability of the person to engage safely or to safely manage the particular equine provided based on the person's representations of his or her ability. And, again, in efforts. I think I see the possibility. But in what sense did the defendant provide an equine to Abigail Brown? In an instructor situation, the instructor is controlling the entire situation. If the instructor feels that that horse is not an adequate mount or too much horse for the rider, the instructor has the responsibility to say, I will not give you a lesson on this particular horse. He's too much for you to handle. And Helen versus Helen defines provides as a horse you either own or you control. Obviously, the instructor in the situation did not own Golden Gift, but the instructor controlled Golden Gift. And because of her control, she meets the definition of provides and has the duty to, one, find out whether it's a good match. And, again, I know we disagree on this, but when I read this section and I relate it to the Colorado statute, which is more directly written, you must safely manage that horse once it's been provided. Because otherwise, if there's no duty to safely manage, that instructor could have that student jumping a six-foot oxer when she is a beginning rider. I mean, you're going to do what the instructor tells you to do. And to remove any type of duty of care from that instructor in that controlled situation means that an instructor could have that student doing things far beyond his ability or the horse's ability that's seriously injured and then walk away and say, well, I have no responsibility here. You have to read the two together. And, again, I'm down to ‑‑ I'll stop here with two minutes to go. But the Colorado statute, which the Wisconsin statute was based on, had in the second part of their immunity provision the participant must safely manage his equine. And they included that, the participant. Here it's unclear whether it's the participant or the provider. Mr. Brown, could you tell me what the difference in the language, in your view, to engage safely in equine activity, now we go to the or part, to safely manage a particular equine provided, what is the difference there? Isn't it just redundancy? No. No? Because, one, you're focusing on the ability of the rider. The second part, you're focusing on the ability of the provider to safely manage. One is the rider, one is the provider. And you can see how that is so ‑‑ it clearly sets out when you read the Colorado Act, which was the foundation of this act, and they changed it. We know it's the foundation. Why? Because in the legislative history, and I attached the exhibit in my reply, it says rewrite for Wisconsin right on the Colorado Act. And the Colorado Act very specifically points, that second portion, points to a participant, and Wisconsin changed it to take the participant out. Right. So don't we interpret the statute that the legislature wrote, rather than whatever the drafting instructions were? And the statute that they wrote, I think ‑‑ Is different from the Colorado statute. By taking that language out, it made it that the provider must safely manage. Actually, it didn't. Not the participant. It doesn't focus on the ability of the provider. The singular focus is on the provider's duty to ascertain or make a reasonable effort to determine the ability of the person who is being provided the horse, to either engage in equine activity in the first place or to safely manage the particular equine provided, based on the representations received. I read it ‑‑ I'm running out of time here. But I read it that the second portion deals with the duties of the provider. Otherwise, I mean, in your trail situation, you ascertain who can handle what horses. You have the trail rider taking out this group of horses, and he decides to cross some bog that has all kinds of holes in it, and horses are falling into the holes, and riders are falling off, and the whole thing is chaos. That may be an argument for a different statute. That's not an argument for the interpretation of this statute. Counsel? It's a good idea to let the judge finish the question. You're making an argument for a different sort of policy judgment by the legislature. And maybe it's a good policy argument, but we're limited to what the statute says. And I guess the way I read it, I'm reading it different than you. We have that. I'm going to allow you some rebuttal time. Thank you very much. All right. Thank you very much. And I apologize for ‑‑ Mr. Kind? May it please the Court. My name is Attorney Peter Kind. I'm a general practitioner in Greene County, Wisconsin, and I represent the Pelley Defendant Country View Equestrian Center. We're requesting the court affirm Judge Crabb's order dismissing plaintiff's complaint for failure to state a claim upon which relief can be granted. We're also requesting the court deny plaintiff's request for remand with leave to amend her complaint. As way of background, I don't think there's any dispute that the Wisconsin Equine Immunity Statute applies here. The debate is the exception. And so the question is with that, Section 895.481, subsection 3B, whether or not that applies here. There are several cases. I didn't realize we would be talking about all the equine cases this morning, but I'm sure the court is familiar with the Barrett v. Lowe, Helen v. Helen, the two published Court of Appeals cases. There is no Supreme Court case that I'm aware of. And then there's the other case, the district ‑‑ Western District, Wisconsin, Dilley v. Holiday Acres. The exception has two parts. I know we've been talking about it here. The first part is Country View ‑‑ the plaintiff must show that Country View Equestrian Center provided an equine to her. And this first part of the exception was discussed in the Barrett case, and the facts are similar to this case. There was an accident, and it occurred during a riding lesson, and Barrett boarded her horse with Lowe. During the lesson, Lowe had instructed Barrett to retrieve her horse, Cowboy, from the pen for a lesson, and while doing so, another horse attacked Cowboy, and Barrett was injured. The issue on appeal was that Barrett claimed that Lowe provided the horse to her. And so the Barrett court began with interpreting the statute with the plain language of the statute, and I think that's what we need to start with here as well. The Barrett court said we can look to the dictionary, and they did, and the Webster Dictionary said provide means to supply for use. Nowhere in the plaintiff's complaint do they allege that Country View Equestrian Center provided or supplied the plaintiff her horse. In fact, paragraph 9 of the plaintiff's complaint states, quote, the plaintiff provided her own horse to be used in a private lesson. And so, you know, the question then comes up, does provided have a different meaning in the complaint than it does in the statute? Presumably the plain language of the word provided means the same, and what she alleged in the complaint was she provided her own horse. I don't believe we need to look further, but if we do, there's case law that discusses it. There's no dispute that she brought her own horse and used it in the lesson. The Barrett court went on to talk about a sale is not the same as providing. Providing suggests that the person supplying the item retains some interest in the item, and that an equine they were satisfied at the end of the case that an equine, providing an equine means making it available for use that the provider either owns or controls. And my colleague is fixating on the control part of it. But at the end of the opinion, the court concluded when she sold Cowboy, Lowe gave up all of her ownership and control of the horse to Barrett, therefore the statutory immunity exception did not apply. Now, what I think is relevant is Barrett boarded her horse with Lowe, but that did not mean that Lowe had control for the purpose of the exception. Furthermore, Barrett was in the middle of a lesson in that case and told to retrieve her horse. The court did not find that Lowe had control because there was a lesson going on here. And I think both of those are relevant because they're similar to the issues in this case. Now, plaintiff's argument is that because she provided an equine to the instructor and the instructor accepted it and made it available back to her, there's no Wisconsin case law that supports this argument. And even as an initial matter, assuming that that argument was valid, I'm not sure there's facts alleged in the complaint that would support that. There's no allegation that Country View Equestrian Center had any ownership of the equine, and there's no allegation that the instructor ever had any direct control of the equine. Owner control, well, neither one is alleged in the complaint. Now, the complaint does allege that the plaintiff was under control of the instructor during the lesson, but not the equine. So it was also discussed in Helen v. Helen. There's some important differences. In that case, neither of the parties had ownership of the horse, so they had to look at control as an issue. But one of the notes that Judge Kraft pointed out in her decision was that the Helen court recognized that a person who already owns a horse can participate in an equine activity without being provided an equine. And I think that's clearly what happened in this case. There's a plain meaning of make available for use. The facts allege clearly state plaintiff brought her own horse, and she provided it for use in a private lesson. There's no allegation that Country View supplied the horse or had any interest in this horse. So I think on the plain language of the first part of the exception, the plaintiff cannot make their case. On the second part, and, again, we talked about that a little bit in both cases, both the Helen court and the Dilley court had decisions interpreting it that the provider has to make two initial determinations. One, what is the ability of the person provided with the equine to safely engage in the equine activity? And, two, his or her ability to safely manage the particular equine. I believe the interpretation that I've heard discussed here by the court that that needs to be made prior to the activity and is the proper interpretation. I think, you know, we're comparing the statute to Colorado. I think the correct reading in ours is it provides an equine to a person and makes a reasonable effort to, one, determine the ability of the person to engage safely in an equine activity, or, two, to safely manage the particular equine provided based on the person's representation of his or her ability. I think this reading actually provides a slightly broader exception than Colorado's because Colorado requires both inquiries be made. Wisconsin only requires one, and that's the difference between the and and the or. So, you know, our exception is probably a little bit broader than Colorado's. I don't think the or makes it a completely different meaning and a whole different statute than Colorado. The other thing I'm concerned about is if we accepted plaintiff's interpretation of the statute that somehow the provider now is required to safely manage the horse after this initial inquiry, the problem we have with that is this exception applies not just to lessons like we're looking at in these two cases or a trail ride. It applies to any equine activity, for example, a rodeo. So somebody is going to do a bucking bronco riding. The provider provides a horse. They're not the rider. They make the two initial inquiries as far as the ability to safely engage and the ability to safely manage. Now the other rider gets on. Are we saying the provider now is responsible for everything that happens after that? I just don't think that's a reasonable interpretation of the statute. The exception has to apply to every possible equine activity, not just lessons. And so furthermore, you know, to say that there's a continuing duty now to manage the horse, well, that, I think, pretty much eliminates the immunity for anyone that provides an equine. Somebody, let's say my client leases out or rents out horses to somebody that wants to come and just do a ride, and it's not a supervised ride. They have a duty now to manage that when they're not even there. I don't think that that's a reasonable interpretation of the statute. And certainly one of the inherent risks listed in the statute is a failure to control the equine. Well, by the plaintiff's interpretation, we're essentially taking that whole inherent risk and eliminating it. I think both the Dilley and the Helen Court's interpretation of the statutes were correct. The last issue is plaintiff's request for remand with leave to amend her complaint. We are not alleging that plaintiff waived her right to request an amendment. What we're arguing is that plaintiff never made a request to amend her pleadings. Mr. Kine, did plaintiff ever raise with the district court the notion of the willful and wanton exception? No, sir. Thank you. There was no decision. There was not a decision under 15A1, amendment within right within 21 days. There was no request under 15A2 by leave of the court. Certainly once the judgment was made under 5090, there was no motion to alter amend judgment within 28 days, and there has been no request under 60B for relief from judgment or order. And so plaintiff cites no case law indicating that Judge Crabb erred in her dismissal with prejudice, and there's no case law suggesting that the district court should have sua sponte granted leave to amend. I don't think there's any real issue here, and we're asking the court to deny that request.  Thank you, Mr. Kine. Mr. Brown, you may have two minutes. Once again, the Colorado Act has formed the basis for the Wisconsin statute, and I've got an exhibit attached to the brief that shows rewrite for Wisconsin that came out of the legislative history file. Is that an appropriate inquiry under Wisconsin's law of statutory interpretation? Pardon? Is that an appropriate line of inquiry in Wisconsin's law of statutory interpretation? I think anything that would aid or help us in understanding the statute and how it was passed. That comes from the concurrence in the Kalal case, not the majority opinion. I'm not familiar with that case. If you're arguing a statutory interpretation case under Wisconsin law, you should be familiar with that case. The Colorado Act, the second section states, and determined the ability of the participant to safely manage the particular equine. It's not in the Wisconsin Act. They took that language. Either they didn't use that language or took it out for whatever reason, however, and made it, it's not clear. The Mettler case, read it the way that I read it, but didn't bother. I don't think that was ever raised as an issue. The Mettler case started out and said the issue in this case is did the instructor safely manage the equine? That's the way that I read that case because that appears to be the plain reading, and to argue otherwise, an instructor would have horses that she provided, and so now she owes a duty to safely manage, and she has horses that she didn't provide, so she has no duty to safely manage. If there's a duty, if the duty is on the instructor or the provider of the horses to manage them safely, there doesn't seem to be much left of immunity. It's the inherent nature of equines to bolt or to flee. The horse survived by running away from its enemies, and so they have a flight response, and when they're spooked, they jump or they do whatever they have to to get away from what they perceive is going to hurt or harm them. That is an inherent risk, an inherent danger in riding an equine, and I believe that's what the statutes were written to deal with, not to absolve all due care involved in equine training or equine lessons or equine trail rides, and so they drafted these exceptions, not very artfully, I will argue, to try to at least leave some duty of care or responsibility, especially many of the statutes had a different standard when people were earning money with the rental of horses or whatnot. Wisconsin doesn't seem to address the difference between someone that's gainfully profiting from that. Thank you. All right. Thank you, Mr. Brown. Thank you. All right. Thank you, Mr. Kine. The case is taken under advisement, and the court will proceed.